JANET M. HEROLD
Regional Solicitor
DANIELLE L. JABERG
Counsel for ERISA
ROSE DARLING
Trial Attorney
Office of the Solicitor
UNITED STATES DEPARTMENT OF LABOR
90 7th Street, Suite 3-700
San Francisco, California  94103
Tel:  (415) 625-7744
Fax:  (415) 625-7772
Email:  darling.rose@dol.gov


Attorneys for Hilda L. Solis, Secretary,
United States Department of Labor

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

Portland Division

| | |
|---|---|
| HILDA L. SOLIS, Secretary of Labor, UNITED STATES DEPARTMENT OF LABOR, <br><br> Petitioner, <br><br> v. <br><br> GEORGETOWN REALTY, INC.; JOHN MAHAFFY; and Georgetown Realty, Inc. Profit Sharing Plan and Trust <br><br> Defendants. | Case No. <br><br><br><br><br> **COMPLAINT FOR VIOLATIONS OF ERISA** - LABOR |

Plaintiff Hilda L. Solis, Secretary of Labor, United States Department of Labor (the "Secretary"), alleges:

## JURISDICTION

1. This action arises under Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001-1191c, and is brought by the Secretary

under ERISA Sections 502(a)(2) and (5), 29 U.S.C. §§ 1132(a)(2) and (5), to enjoin acts and practices that violate the provisions of Title I of ERISA, to obtain appropriate equitable relief for breaches of fiduciary duty under ERISA Section 409, 29 U.S.C. § 1109, and to obtain such further equitable relief as may be appropriate to redress and to enforce the provisions of Title I of ERISA.

2.  This Court has jurisdiction over this action pursuant to ERISA Section 502(e)(1), 29 U.S.C. § 1132(e)(1).

3.  Venue of this action lies in the District of Oregon pursuant to ERISA Section 502(e)(2), 29 U.S.C. § 1132(e)(2), and in the Portland Division of this Court, because the Georgetown Realty, Inc. Profit Sharing Plan and Trust was administered in Portland, Oregon, within this district.

## DEFENDANTS

4.  The Georgetown Realty, Inc. Profit Sharing Plan and Trust (the "Plan") is an employee benefit plan within the meaning of ERISA Section 3(3), 29 U.S.C. § 1002(3), which is subject to the provisions of Title I of ERISA pursuant to ERISA Section 4(a), 29 U.S.C. § 1003(a).

5.  At all relevant times, Defendant Georgetown Realty, Inc. was and is the sponsor and Plan Administrator of the Plan, a fiduciary of the Plan within the meaning of ERISA Sections 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii), and a party in interest to the Plan within the meaning of ERISA Sections 3(14)(A) and (C), 29 U.S.C. §§ 1002(14)(A) and (C).

6.  At all relevant times, Defendant John Mahaffy was an officer and owner of Defendant Georgetown Realty, Inc.

7.  At relevant times, Defendant John Mahaffy was a named Trustee of the Plan; exercised discretionary authority and control respecting the management and disposition of the Plan and its assets; exercised discretionary authority and responsibility in the administration of the Plan; was and is a fiduciary of the Plan within the meaning of ERISA Sections 3(21)(A)(i)

and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii); and was and is a party in interest to the Plan within the meaning of ERISA Sections 3(14)(A), (E) and (H), 29 U.S.C. §§ 1002(14)(A), (E) and (H).

8. The Plan is named as a Defendant pursuant to Rule 19(a) of the Federal Rules of Civil Procedure, solely to ensure that complete relief can be granted.

## ALLEGATIONS

9. Paragraphs 1 through 8 above are realleged and incorporated herein by reference.

10. Defendant Georgetown Realty, Inc. ("Georgetown" or the "Company") is a real estate brokerage company located in Portland, Oregon.

11. Defendant John Mahaffy ("Mahaffy") is Georgetown's sole owner, officer and principle broker.

12. The Company established the Plan effective January 1993 to provide retirement benefits to its employees and affiliated agents upon retirement.

13. The Plan's governing documents identify Defendant Mahaffy as Trustee of the Plan.

14. The Plan's governing documents provide that the Trustee's powers include, among other things, the power to purchase, sell, exchange or transfer property and borrow or raise money for the purpose of the Plan. The Plan's governing documents further provide that the Plan Trustee has sole authority to invest Plan assets.

15. At all relevant times, Defendant Mahaffy directed the Plan's investments himself as Plan Trustee, without any direction from Plan participants.

16. At all relevant times, Defendant Mahaffy had authority over Defendant Company's corporate bank account.

17. The Plan's governing documents identify the Defendant Company as the Plan Administrator.

18. The Plan's governing documents provide that the Plan Administrator has exclusive, total and complete authority to interpret the Plan and determine all questions arising in

the administration, interpretation and application of the Plan.  The Plan Administrator's duties include, among other things, determining eligibility, establishing and maintaining participants' accounts, determining benefits, authorizing disbursements, and regulating participant loans.

### **Imprudent investment in "RiverGate," a real estate development project**

19.	In or around early 2005, a land developer and real estate agent formerly affiliated with Defendant Georgetown approached Defendant Mahaffy to invest in a joint venture to purchase property and develop it into a resort, known as the RiverGate resort project ("RiverGate").

20.	The RiverGate project involved purchasing at least seven vacant, adjacent properties overlooking the Crooked River and Meadow Lakes golf course in Prineville, Oregon, and developing a 292-unit condominium, hotel and conference center, at an estimated total cost of more than $110 million.  According to Defendant Mahaffy, prior to the RiverGate project, the Plan had never developed real estate before.

21.	Between approximately August and December 2005, Defendant Mahaffy caused the Plan to purchase six parcels of land in Prineville, Oregon, which would comprise the bulk of the RiverGate development.  In March 2007, Defendant Mahaffy caused the Plan to purchase the seventh and last property to comprise RiverGate.  The Plan paid all the down payments and other costs associated with the acquisitions.  Defendant Mahaffy's business partners in the joint venture financed all of the properties through individual mortgages and held title to all of the properties that the Plan purchased.  The total purchase price for the seven parcels was approximately $2.9 million.

#### *No written agreement for the investment*

22.	Despite the Plan's substantial investment in RiverGate, Defendant Mahaffy failed to execute an agreement establishing the joint venture or setting forth the rights and obligations of the parties to the project.  The only contractual documents that appear to have been signed by the parties to the project with respect to RiverGate were one-page agreements signed by Mahaffy as Trustee and two of his business partners in October 2005, respecting each parcel purchased.

According to these agreements, the Plan was "responsible for making all payments, carrying costs and improvements associated with the property." Defendant Mahaffy's business partners were "responsible for acquiring the property, financing, city and county approvals, project planning and property management." Profits were to be divided first by reimbursing the Plan and Defendant Mahaffy's business partners for all money they advanced or spent. Following reimbursements, remaining profits would be divided two-thirds to the Plan and one-third to Defendant Mahaffy's business partners. The one-page agreements do not contain any provisions setting forth the Plan's ownership in RiverGate or its legal rights in the event that the project failed and/or Defendant Mahaffy's business partners failed to carry out their responsibilities.

### *Plan did not hold title to the properties it acquired*

23. According to the one-page agreements that Defendant Mahaffy and his business partners signed in October 2005, the Plan was to acquire title to the properties purchased "within ten business days after recording of escrow." Thereafter, ownership in the properties would be divided two-thirds to the Plan and one-third to Defendant Mahaffy's business partners. After the Plan purchased the seven parcels, however, titles on the properties remained in the names of Defendant Mahaffy's business partners and were never transferred to the Plan.

24. Neither Defendant Mahaffy nor Defendant Company took any action to transfer the titles to the properties to the Plan's name.

### *Inadequate due diligence respecting the purchase of each parcel*

25. In or around August 2005, the Plan paid an appraisal firm to appraise five of the seven properties that the Plan purchased as part of the RiverGate investment. The appraisal firm completed residential appraisals for the five properties, but it did not consider the commercial or resort development potential of any property. With respect to the remaining two parcels that the Plan purchased, the Plan relied on one appraisal obtained by Defendant Mahaffy's business partner and another obtained by the lending institution. Based on the appraisal information obtained, the Plan's purchase price for at least three of the properties purchased exceeded the properties' appraisal values at the time of purchase.

*Inadequate business plan, no financing commitments or rate-of-return analysis*

26.     On information and belief, Defendant Mahaffy's business partner authored two business plans relating to the RiverGate project. Neither business plan identified the source of funding or financing commitments for the development phase of the project, nor did they explain the source for deriving estimated costs for the project. In addition, both business plans provided estimated sales values per condominium unit based on the assumption that every unit in the development would be sold, but neither business plan indicated projected sales volume by date. Finally, neither business plan provided an estimated rate of return for the Plan's investment or for any other potential investor.

*Plan's debt obligations exceed its assets and Plan becomes illiquid*

27.     Between approximately November 2005 and November 2007, the Plan paid more than $250,000 in mortgage payments on the seven RiverGate properties. Between approximately May 2005 and December 2007, the Plan paid additional expenses totaling more than $100,000 related to the RiverGate project. Defendant Mahaffy authorized all expenditures including checks and wire transfers.

28.     In or around February 2006, Defendant Mahaffy authorized the Plan to borrow $200,000 from other business associates to use toward the RiverGate project. As of March 2012, the Plan had not repaid any principal on this loan.

29.     In order to provide additional funding to the RiverGate project, in 2006 Defendant Mahaffy sold two income-producing properties owned by the Plan.

30.     In 2007 and 2008, Defendant Mahaffy attempted to find development partners and other investors for the RiverGate project, but no other partner or investor completed an investment in the project.

31.     By the end of 2008, Defendant Mahaffy had expended most of the Plan's cash and sold off most of its securities to fund RiverGate. As a consequence, Defendant Mahaffy caused the Plan to invest more than eighty percent of its assets in one, illiquid investment—the RiverGate project. In addition, as a result of the Plan's investment in RiverGate, during the time

period in question, the Plan owed more on its obligations then it had assets from which to pay. As a result, the Plan was unable to timely satisfy distribution requests made by several Plan participants in 2009 and 2010.

32. By October 2010, the Plan had defaulted on the mortgages for six of the seven properties comprising RiverGate, and the properties were foreclosed or sold. On information and belief, to date, all seven properties that were intended to comprise RiverGate have been foreclosed or sold.

33. On information and belief, the current value of the Plan's RiverGate investment is zero.

34. As a result of the RiverGate investment, the Plan lost at least $2 million, consisting of approximately $1,525,580.00 in principal plus lost-opportunity costs, which continue to accrue.

### Failure to value Plan assets at fair market value

35. Paragraphs 1 through 34 above are realleged and incorporated herein by reference.

36. Section 7.2 of the Plan document requires the Trustee to value the assets of the Trust fund at their fair market value as of the last day of each Plan year.

37. The Plan reported approximate values for the RiverGate project from 2006 to 2009, but the valuations were not based on any identifiable or supportable methodology. As a result, the values reported were not reliable.

### Prohibited payments to parties in interest

38. Paragraphs 1 through 37 above are realleged and incorporated herein by reference.

39. From December 2005 to April 2008, Defendant Mahaffy made several payments totaling more than $140,000 to himself from the Plan's trust account. Defendant Mahaffy claims that these payments were participant loans to himself. According to the Plan document, all participant loans must be evidenced by a Promissory Note payable to the Trustee. Defendant

Mahaffy, however, did not record Promissory Notes for all of the payments to himself. In addition, the Plan document required participant loans to be repaid at least quarterly. Defendant Mahaffy, however, made only sporadic repayments to the Plan on the amounts that he paid himself from the Plan's trust account. According to Plan records, as of December 2009, Defendant Mahaffy owed the Plan $42,978.60 in principal and accrued interested on the alleged participant loans to himself.

40. Because the Plan is a pooled profit-sharing plan, Mahaffy's debt is an asset of the Plan owned on a pro-rata basis by all participants.

41. To date, neither Defendant Mahaffy nor Defendant Company has attempted to recover Defendant Mahaffy's outstanding loan balance on the Plan's behalf.

42. Additionally, in 2005 and 2006, the Plan paid Defendant Georgetown $26,640.00 in sales commissions for real property sold and purchased by the Plan in transactions with unrelated third parties. To date, neither Defendant Mahaffy nor Defendant Company has attempted to recoup this amount to the Plan.

## Failure to collect an outstanding participant loan

43. Paragraphs 1 through 42 above are realleged and incorporated herein by reference.

44. In early 2008, a Georgetown employee and Plan participant took out two participant loans from the Plan totaling $6,000. In April 2009, the employee resigned from the Company and requested distribution of her account balance. At that time, she had not paid any principal on the two loans and owed more than $700 in accrued interest. In June 2009, Defendant Mahaffy authorized a distribution of the employee's account balance, failing to account for the more than $6,700 that she owed to the Plan on the two loans.

45. Because the Plan is a pooled profit sharing plan, the employee's unpaid loan principal and accrued interest are Plan assets owned on a pro rata basis by all participants.

46. To date, neither Defendant Mahaffy nor Defendant Georgetown has sought repayment of this employee's debt on the Plan's behalf.

## VIOLATIONS OF ERISA

47. By the conduct described in paragraphs 9 through 46 above, Defendants Company and Mahaffy, acting in their fiduciary capacities:

(a) failed to hold all assets of the Plan in trust, in violation of ERISA Section 403(a), 29 U.S.C. § 1103(a);

(b) failed to act solely in the interest of the participants and beneficiaries of the Plan and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of Plan administration, in violation of ERISA Section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

(c) failed to act with care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA Section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B);

(d) failed to diversify the investments of the plan so as to minimize the risk of large losses unless under the circumstances it was clearly prudent not to do so, in violation ERISA Section 404(a)(1)(C), 29 U.S.C. § 1104(a)(1)(C);

(e) failed to act in accordance with the documents and instruments governing the Plan as required by ERISA Section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D);

(f) caused the Plan to engage in transactions which they knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the Plan, in violation of ERISA Section 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D);

(g) dealt with assets of the Plan in their own interests and acted on behalf of a party whose interests are adverse to the interests of the Plan or the interests of its participants and beneficiaries, in violation of ERISA Sections 406(b)(1) and (2), 29 U.S.C. § 1106(b)(1) and (2);

(h) participated knowingly in the breaches of fiduciary duty of other fiduciaries, in violation of ERISA Section 405(a)(1), 29 U.S.C. § 1105(a)(1);

      (i)      enabled another fiduciary to commit a breach of ERISA through failure to comply with ERISA Section 404(a)(1), in violation of ERISA Section 405(a)(2), 29 U.S.C. § 1105(a)(2); and

      (j)      made no reasonable effort under the circumstances to remedy the breaches of another fiduciary of which they had knowledge, in violation of ERISA Section 405(a)(3), 29 U.S.C. § 1105(a)(3).

      48.      As a direct and proximate result of the breaches of fiduciary duties committed by the Company and Mahaffy, as described in paragraphs 1 through 47 above, the Plan has suffered losses, including lost-opportunity costs, for which Defendants are jointly and severally liable pursuant to ERISA Section 409, 29 U.S.C. § 1109.

## PRAYER FOR RELIEF

WHEREFORE, the Secretary prays for judgment:

      A.      Ordering the Company and Mahaffy to restore to the Plan any losses, including lost-opportunity costs, resulting from fiduciary breaches committed by them or for which they are liable;

      B.      Permanently enjoining the Company and Mahaffy from violating the provisions of Title I of ERISA;

      C.      Removing the Company and Mahaffy as fiduciaries of the Plan and permanently enjoining Defendant Mahaffy from serving as a fiduciary of, or service provider to, any ERISA-covered employee benefit plan;

      D.      Appointing an independent fiduciary to marshal the assets of the Plan, distribute any proceeds which accrue to the Plan, terminate the Plan if necessary and feasible to do so, and conclude any plan-related matters connected with the proper termination of the Plan;

      E.      Requiring Defendants to pay for all costs associated with the appointment and retention of the independent fiduciary;

      F.      Requiring Defendants to cooperate with the independent fiduciary;

      G.      Awarding the Secretary the costs of this action;

    H.      Awarding post-judgment interest; and

    I.      Ordering such further relief as is appropriate and just.

Date: June 29, 2012

                              M. PATRICIA SMITH
                              Solicitor of Labor

                              JANET M. HEROLD
                              Regional Solicitor

                              DANIELLE L. JABERG
                              Counsel for ERISA


                        By:  _/s/ Rose Darling_____
                              ROSE DARLING (Cal. Bar # 243893)
                              Trial Attorney

                              Attorneys for the Secretary
                              United States Department of Labor